GIMBEL BROTHERS, INCORPORATED, APPELLANT, v. MARY A. BARRETT, RESPONDENT.

Submitted October 30, 1931—Decided May 16, 1932.

For the appellant, *Smith & Slingerland.*

For the respondent, *Henry T. Stetson* (*William C. Gormley*, on the brief).

The opinion of the court was delivered by

PARKER, J. There are seven grounds of appeal, but the sum and substance of them is that the trial court erred in directing a verdict for the defendant, who is, and at the time of the transaction involved in the suit was, a married woman living with her husband in South Orange, Essex county. The suit was for the price and value of goods sold and delivered, and the direction of verdict was put upon the ground that they were necessaries and that there was no evidence to rebut the presumption that they were purchased by the wife as agent for her husband, who was not a party to the suit.

We conclude that there was a case for the jury in both aspects, particularly in the latter, viz., the presumption of agency.

From the documentary evidence and the testimony, it appears that plaintiff corporation has for some years conducted a department store in New York city; that some years previously it had had on its books the account of "Mrs. Stephen F. Barrett" (the defendant), but that account had become inactive, and in 1929 plaintiff instituted a campaign for new and revived accounts and solicited Mrs. Barrett for her account. In response she signed and sent in a card giving her name "Mrs. Stephen F. Barrett," and address, at the top, and the body of which reads "please add by name to your list monthly charge customers. Here is my signature for your records: Signature—Mary A. Barrett. Bank in which my checks will be drawn" (naming bank).

This was acknowledged by plaintiff June 11th, 1929, by a letter addressed to "Mrs. Stephen F. Barrett" and opening: "Dear Mrs. Barrett."

Plaintiff's books of account for preceding years are not in evidence, but the court admitted as *Exhibit P-4* a file of memoranda of the credit department beginning in 1913 and

running to 1931, and relating to account No. 23,993. Several of the documents are signed by defendant. In 1913 she wrote advising change of street address in Roselle, New Jersey, signing "Mrs. Stephen F. Barrett." The office note reads: "Name Stephen F. Barrett." In 1922 defendant gave notice of change of address to South Orange and wrote (doubtless on printed form) "I am willing to have my name on your charge account books, and will probably avail myself of its privileges. You may send me the identification coin, will be chiefly used by Mrs. S. F. Barrett. Very truly yours, M. Barrett." The file also contains memoranda under date of March 1st, 1930, and "8/10" year not stated and stating among other things "business ins[urance] bills to 60 Beaver street" (the husband's office). The testimony of plaintiff's witness Morrison, however, is specific that no bills were ever sent to the husband and that the "investigation on this particular account was all on Mrs. Stephen F. Barrett."

The rule applicable in cases of this class, as laid down by the late Chief Justice Depue in *Vusler* v. *Cox*, 53 *N. J. L.* 516, is as follows: "Where husband and wife are living together, the wife has implied authority to pledge her husband's credit for such things as fall within the domestic department ordinarily confided to her management, and for articles furnished to her for her personal use suitable to the style in which the husband chooses to live. Under such circumstances the presumption is in favor of the wife's authority to contract on behalf of the husband." (Citing cases.) It will be noted that there is only a presumption, which, like presumptions generally, may be overcome by evidence. Thus, in *Wilson* v. *Herbert*, 41 *N. J. L.* 454 (at *p.* 461), the same learned justice said: "[The wife] may contract for such articles [*i. e.,* for domestic use] as principal, and assume the responsibility of a principal debtor. But to fix upon her such a liability, it must affirmatively appear that she made the purchase on her individual credit." There was a judgment against Mrs. Wilson, the plaintiff in error, which the Supreme Court reversed, on the ground that while it appeared in evidence that the goods were charged to the wife on the books

of the plaintiffs below, it did not appear that the wife directed them to be so charged, or knew that the account had been kept in that manner. So, also, in *Feiner* v. *Boynton,* 73 *Id.* 136, there was no evidence of an express contract by the wife to charge her personal credit, and all that appeared was that her checks were used in payment, and the account was kept in her name. It further appeared that she paid with money furnished by her husband, and there was nothing to show even that the bills were made out in her name. In the present case, as we have seen, there was specific evidence that the wife applied for credit to herself, that she signed the application, and that the credit was extended to her and not to her husband after investigation of her standing. This evidence was quite sufficient to make a case for the jury on the question whether the wife purchased on her own credit the goods which were concededly received and used.

This conclusion is certainly not shaken by the fact that when the bill of particulars is examined, it shows that the account, beginning on June 20th, shows total purchases of $550.09 up to and including June 28th, by the wife of an insurance broker having a family of six children and earning net $17,000 that year; and it may well be that if the plaintiff were put to a suit against the husband to recover this account, he could defend on the ground that such a bill for "necessaries" against him on the theory of implied agency, was altogether excessive and unwarranted. This thought, of course, does not go to the root of the case; but for reasons already stated we are clear that there was error in the direction of a verdict, and that the court should have submitted to the jury the question whether the goods were furnished on the credit of the wife, and with her assent if not indeed by her express direction.

The judgment will be reversed to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—The Chief Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Donges, Van Buskirk, Kays, Hetfield, Dear, Wells, Kerney, JJ. 14.